Thomas S. Ingrassia, Esq., SBN 149673
Jennifer N. Lutz, Esq., SBN 190460
Cameron O. Flynn, Esq., SBN 301830
**PETTIT KOHN INGRASSIA & LUTZ PC**
11622 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 755-8500
Facsimile: (858) 755-8504
E-mail: tingrassia@pettitkohn.com
      jlutz@pettitkohn.com
      cflynn@pettitkohn.com

Attorneys for Plaintiff
**DIRECTORS FINANCIAL GROUP**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| DIRECTORS FINANCIAL GROUP, a California Corporation,<br><br>     Plaintiff,<br><br>v.<br><br>JOSEPH SAVINO, an individual residing in the State of Illinois; VINCENT LIGUORI, an individual residing in the State of Nevada; MICHAEL DOERR, an individual residing in the State of Illinois; JOHN BENEDICT BOETSCHER, an individual residing in the State of Illinois; GIOVANNI VALDEZ; an individual residing in the State of Illinois; DAVID YANEZ, an individual residing in the State of Illinois; DANIEL HARLAN, an individual residing in the State of Illinois; AMERICAN FINANCIAL NETWORK, INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>     Defendants. | CASE NO.: 8:17-cv-18<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Courtroom:<br>District Judge:<br>Magistrate Judge:<br>Complaint Filed:<br>Trial Date:    Not Set |

Plaintiff Directors Financial Group ("DFG" or "Plaintiff") by the undersigned counsel, brings this Complaint for injunctive relief and monetary damages against Defendants, American Financial Network, Inc., Joseph Savino,

1  Vincent Liguori, Michael Doerr, John Benedict Boetscher, Giovanni Valdez, David

2  Yanez and Daniel Harlan and, in support thereof, alleges as follows:

### STATEMENT OF THE CASE

4  DFG brings this action against its former employees, Joseph Savino, Vincent

5  Liguori, Michael Doerr, John Benedict Boetscher, Giovanni Valdez, David Yanez

6  and Daniel Harlan (collectively the "Employee Defendants"), and American

7  Financial Network, Inc. ("AFN"), pursuant to the Lanham Act, 15 U.S.C. § 1125 *et*

8  *seq.*, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and

9  pendant state law claims seeking injunctive relief and substantial damages.  The

10  Employee Defendants surreptitiously orchestrated a plan in which they resigned

11  from DFG in succession and joined AFN, laying the groundwork for their

12  departures by stealing a substantial amount of confidential and private information

13  from DFG while in DFG's employ and diverting that information and DFG's

14  customers to AFN.  AFN used DFG's employees as its agents to undermine and

15  severely damage DFG and unfairly gain a competitive advantage.  Defendants'

16  actions were illegal and have caused substantial injury and continue to cause

17  irreparable harm to DFG.

### THE PARTIES

19  1.    Plaintiff DFG is a corporation organized and existing pursuant to the

20  laws of the State of California with a principal place of business at 11 Cushing,

21  Suite 250, Irvine, California 92618.

22  2.    Defendant Joseph Savino was and is an adult individual and resident of

23  the State of Illinois.  Defendant Savino was employed by DFG as a co-branch

24  manager and a loan officer, in its Illinois office, from April 2011 to on or about

25  November 23, 2016.  Savino had access to DFG's business plans, marketing

26  relationships and strategies, trade secrets, and was in a position of trust and

27  confidence with respect to such information, and DFG's loan officers and realtor

28  partners.

1511-7005

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

3.     Defendant Vincent Liguori was and is an adult individual and resident of the State of Nevada.  Defendant Liguori was employed by DFG as a co-branch manager, in its Illinois office, from June 2016 to on or about September 27, 2016. Liguori had access to DFG's business plans, marketing relationships and strategies, trade secrets, and was in a position of trust and confidence with respect to such information, and DFG's loan officers and realtor partners.

4.     Defendant Michael Doerr was and is an adult individual and resident of the State of Illinois.  Defendant Doerr was employed by DFG as a loan officer, in its Illinois office, from June 2016 to on or about September 30, 2016.  Doerr had access to DFG's business plans, marketing relationships and strategies, trade secrets, and was in a position of trust and confidence with respect to such information, and DFG's loan officers and realtor partners.

5.     Defendant John Benedict Boetscher was and is an adult individual and resident of the State of Illinois.  Defendant Boetscher was employed by DFG as a co-branch manager and a loan officer, in its Illinois office, from May 2014 to on or about December 9, 2016.  Boetscher had access to DFG's business plans, marketing relationships and strategies, trade secrets, and was in a position of trust and confidence with respect to such information, and DFG's loan officers and realtor partners.

6.     Defendant Giovanni Valdez was and is an adult individual and resident of the State of Illinois.  Defendant Valdez was employed by DFG as a loan officer, in its Illinois office, from April 2016 to on or about August 31, 2016.  Valdez had access to DFG's business plans, marketing relationships and strategies, trade secrets, and was in a position of trust and confidence with respect to such information, and DFG's loan officers and realtor partners.

7.     Defendant David Yanez was and is an adult individual and resident of the State of Illinois.  Defendant Yanez was employed by DFG as a loan officer, in its Illinois office, from August 2016 to on or about December 20, 2016.  Yanez

1511-7005

1  had access to DFG's business plans, marketing relationships and strategies, trade
2  secrets, and was in a position of trust and confidence with respect to such
3  information, and DFG's loan officers and realtor partners.

4      8.   Defendant Daniel Harlan was and is an adult individual and resident of
5  the State of Illinois.  Defendant Harlan was employed by DFG as an underwriter
6  for DFG, in its Illinois office, from August 2015 to on or about October 17, 2016.
7  Harlan had access to DFG's business plans, marketing relationships and strategies,
8  trade secrets, and was in a position of trust and confidence with respect to such
9  information, and DFG's loan officers and realtor partners.

10     9.   Defendant AFN is a corporation organized and existing pursuant to the
11 laws of the State of California with a place of business at 10 Pointe Drive, Suite
12 330, Brea, CA 92821.

13                      **JURISDICTION AND VENUE**

14     10.  DFG incorporates all previous paragraphs as though fully stated
15 herein.

16     11.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331
17 and 18 U.S.C. § 1836.

18     12.  Personal jurisdiction against the Defendants is proper pursuant to Cal.
19 Code Civ. Pro. sec. 410.10.

20          **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

21     13.  DFG incorporates all previous paragraphs as though fully stated
22 herein.

23     14.  DFG is an FHA approved and licensed direct mortgage lender that
24 offers a variety of purchase and refinancing programs tailored to fit the needs of
25 its borrowers.  DFG is an established lender based in Orange County, California,
26 with an exceptional reputation and goodwill built upon over five (5) years of
27 service.
28 ///

15.  A client who is using or considering using DFG's services provides DFG with a wide variety of personal and confidential information, including Social Security numbers, dates of birth, contact information, sensitive credit history, bank account numbers, mortgage amounts, tax returns, and all of the financial information that is necessary to facilitate a home loan.  DFG's potential clients provide such information to DFG with the understanding that DFG will protect this highly private information.  DFG is required to maintain the privacy of this information by extremely strict federal laws that carry substantial penalties if violated.

16.  DFG does not release, share or disclose such confidential information to the general public.  DFG maintains the secrecy of this confidential information and derives an economic and competitive advantage from maintaining the non-disclosure of such information.  If a competitor obtained this information, it could undercut DFG on DFG's loans and divert DFG's clients by aggressively pursuing those clients based on the information kept by DFG.

17.  The Employee Defendants, while employed by DFG, all worked in DFG's office in Lockport, Illinois.  As co-branch managers, Savino, Liguori and Boetscher supervised Doerr, Valdez and Yanez; and they had access to DFG's most sensitive data and programs.  As an underwriter, Harlan had similar such access and reported directly to the DFG corporate office.

18.  The Employee Defendants were entrusted with DFG's referral agreements, marketing partners and client lists, and were expected to originate loans through such resources to be funded by and through DFG.  Moreover, such information was to be maintained exclusively for DFG's benefit and any information about borrowers was not to be disclosed outside DFG.

///

///

///

5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

19.   To protect its confidential and proprietary information, as well as its relationships with employees and clients, DFG required the Employee Defendants to sign certain restrictive covenants.   Savino and Boetscher each signed and executed an Employment Agreement containing the following sections:

**SECTION THREE**

CONFIDENTIALITY

In consideration of the willingness of DFG to associate itself with the Employee in further consideration of all compensation to be paid to Employee by DFG under the terms and conditions of this Agreement, Employee agrees as follows:

(a) Non-Disclosure. Employee, while in the employ of DFG or at any time thereafter, will not, without the express written consent of DFG, directly or indirectly communicate or divulge to, or use for his own benefit or for the benefit of any other person, firm, association or corporation, any of DFG's Confidential Information which was communicated to or otherwise learned of or acquired by Employee during the course of his relationship with DFG. . . .

(b) Return of Information. Promptly after the termination of his relationship with DFG for any reason and whether or not pursuant to a[] relationship agreement, Employee will deliver to DFG all originals and copies of all Confidential Information, including but not limited to memoranda, Borrowers lists, samples, records, documents, computer programs, and other materials requested by DFG which has obtained from DFG while serving in any such capacity.

**SECTION FOUR**

NON-SOLICITATION AND NON-INTERFERENCE

In consideration of the willingness of DFG to associate itself with the Employee in further consideration of all compensation to be paid to Employee by DFG under the terms and conditions of this Agreement, Employee agrees as follows:

(a) Non-Solicitation of Borrowers. During Employee's relationship with DFG, and for a period of two (2) years following termination of Employee's relationship with DFG for any reason whatsoever and within the reasonable geographical territory of five (5) miles radius from DFG's office the Employee was assigned and except in the good faith furtherance of the interests of DFG, Employee will not, without the express written consent of DFG, contact prospective borrowers or existing DFG members that the loan officer has come to know because of the relationship with DFG, including any person, firm, association or corporation. Employee will not directly or indirectly make any such contact, either for his benefit or for the benefit of any person, firm, association or corporation to make any such contact.

(b) Non Interference. During Employee's relationship with DFG, and for a period of two (2) years following termination of Employee's relationship with DFG for any reason whatsoever, Employee shall not induce or encourage, directly or indirectly, (i) any employee of DFG to leave his or her relationship, or to seek relationship with anyone other than DFG. . . or (ii) any Borrower of DFG to

modify or terminate any relationship, whether or not evidenced by a written contract, with DFG.

*See* Employment Agreements, attached hereto as **Exhibit 1**.

20.   Liguori signed and executed an Employment Agreement containing substantially identical sections as those set forth directly above. *See id.*

21.   The other Employee Defendants each signed an Employment Exclusivity Disclosure, certifying:

> I <u>do not</u> have other employment including self-employment that is in the mortgage lending, real estate or a related field. All mortgage lending and real estate licenses that I have are only associated with Directors Financial Group. I understand that should I seek other employment or licensing associated within the field I will notify the human resources department 72 hours PRIOR to engaging in outside employment.

*See* Employment Exclusivity Disclosures, attached hereto as **Exhibit 1** (emphasis in original).

22.   In addition to certain contractual obligations owed to DFG, all of the Employee Defendants had statutory and common law obligations to comply with their fiduciary obligations and duties of loyalty to DFG while they were employed by DFG (and receiving significant compensation therefor) and were legally obligated to protect DFG's trade secrets. AFN similarly had common law and statutory duties not to encourage, aid or abet employees to steal DFG's trade secrets or breach their fiduciary obligations to DFG.

23.   The Employee Defendants conspired amongst themselves and with AFN, DFG's direct competitor, to leave DFG and join AFN. Savino and Liguori, who led this effort while both still employed by DFG, also recruited other personnel to join AFN to work on the loans of DFG borrowers unlawfully diverted from DFG. In conjunction with these coordinated departures, the Employee Defendants stole confidential and proprietary information from DFG, and used this information to unlawfully divert DFG's loans from DFG to AFN. The Employee Defendants, led by Savino and Liguori, and all while still employed and

1511-7005

1    compensated substantially by DFG, established an operations center at AFN with

2    the intent of undermining their employer DFG.

3        24.   For example, on August 16, 2016, Savino and Liguori, while both still

4    employed by DFG, contacted Maria Lara, after seeing her resume online, and

5    recruited her as a mortgage processor. *See* August 16, 2016 Email

6    Correspondence, attached hereto as **Exhibit 2**. They advised Lara that "We are

7    looking for a processor familiar with Encompass to work out of our South

8    Suburban Lockport IL office." *Id.* at 1. The office referenced was that of DFG,

9    but Savino and Liguori excluded any mention of DFG and instead identified the

10    recruiting company as "JJS Financial," and provided a non-DFG email address

11    and cell phone number as contact information. *Id.* Savino and Liguori

12    deliberately concealed this information from DFG, because they intended all along

13    to hire Lara to work at AFN on loans they were stealing from DFG.

14        25.   On August 23, 2016, John D'Onofrio, the Divisional Manager for

15    National Sales for AFN, sent an email to Ashley Potts, AFN Branch Relations

16    Coordinator, and copied Savino and Liguori on the message: "Let's start to put

17    together travel arrangements for Dan Harlan, he is the UW [underwriter] that

18    works for Vince and Joe Savino. They will have the operations package back to

19    you later today. I'm arranging a call with Dan and the credit risk managers."

20    August 2016 Email Correspondence, attached hereto as **Exhibit 3** at 6. Savino,

21    then still employed by DFG, advised D'Onofrio and Potts that Harlan "now has

22    the employment agreement and will have that sent out soon." *Id.* at 5. Savino and

23    Liguori also assisted Harlan, in coordination with AFN, to visit AFN offices in

24    California as part of this process. *See id.* AFN sent Harlan an offer letter on

25    August 31, 2016. *See id.* at 1. Harlan's date of hire at AFN was September 12,

26    2016, and D'Onofrio was his supervisor; but Harlan remained officially employed

27    and substantially compensated by DFG until October 17, 2016. *See* AFN Letter of

28

Employment and September 30, 2016 Email Correspondence, attached hereto as **Exhibit 4**.

26. Savino and Liguori placed their personnel at AFN to work on the loans they diverted from DFG and based on the DFG confidential and proprietary information they stole. On September 9, 2016, Savino, while still at DFG, wrote in an email – titled "AFN training schedule" – to, *inter alia*, Liguori, Boetscher, Doerr, Yanez and Lara that "Maria is starting on Monday [September 12, 2016] so we hope to have Encompass log's [sic] for her as she can start on a few new applications we have already." September 9, 2016 Email Correspondence, attached hereto as **Exhibit 5** at 2. Indeed, the Employee Defendants, while still employed by DFG, submitted loan files directly to Lara at AFN without DFG's knowledge and bypassed DFG completely. *See* September 20, 2016 Email Correspondence, attached hereto as **Exhibit 6**.

27. Savino, while still employed by DFG, also ordered Laura Flores, a DFG loan processor, to process loans for AFN and threatened to terminate her employment if she did not agree to do so.

28. On September 16, 2016, Liguori, while still employed by DFG and in violation of his Employment Agreement, sent AFN employment applications from his Gmail email account to three DFG employees, including Doerr, at their personal email addresses. *See* September 16, 2016 Email Correspondence, attached hereto as **Exhibit 7**. Doerr thereafter completed and submitted the employment application to AFN, and terminated his employment with DFG in late September 2016. In the AFN employment application, Doerr listed as the reason for leaving DFG: "GROUP MOVING." AFN Employment Application excerpt, attached hereto as **Exhibit 8** (emphasis in original). Doerr signed with AFN a Confidentiality, Assignment and Non-Solicitation Agreement and an Employment Agreement, which prohibited the very misconduct in which he engaged while employed by DFG. *See id.*

1511-7005

29. Liguori and Savino, while both still employed by DFG, also orchestrated the departure of at least two (2) other DFG employees, Robert Cockrell and Michael Kaleikini, to AFN. *See* **Exhibit 7**; September 19, 2016 Email Correspondence, attached hereto as **Exhibit 9**.

30. As Savino set in motion the collective departure of the Employee Defendants from DFG to AFN, and while still employed by DFG, he instructed subordinate DFG employees, prior to departing DFG, to send him DFG's confidential and proprietary information for use on behalf of AFN. For instance, on September 16, 2016, while both still employed by DFG, Doerr sent Savino an Encompass report spreadsheet – attached to an email with the subject line "4192" – listing nearly 4,200 DFG borrower names and containing confidential information, such as loan amounts, note rates, Social Security numbers, dates of birth and credit scores. *See* September 16, 2016 Email Correspondence, attached hereto as **Exhibit 10**.[1] This report is confidential and proprietary to DFG, and the information in this report is intended only for the use of DFG personnel in the performance and furtherance of DFG business. There would have been no legitimate reason for Doerr to transmit the DFG client report to Savino in the ordinary course of conducting business for DFG and in furtherance of its interests. One or more of the Employee Defendants generated the report of DFG clients and confidential information for the unlawful use by the Employee Defendants for the benefit of AFN and to the severe detriment of DFG.

31. In addition, it is clear that Savino intended to and did move current DFG customers to AFN and orchestrated such actions all while remaining in DFG's employment.

a. For example, on September 8, 2016, Savino advised that a rate lock had been requested on a DFG client ("DFG Client #1"), whose account

---

[1]. Due to the sensitive and confidential nature of the information contained in the spreadsheet, DFG is submitting only the email message that contained the attached spreadsheet.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

1511-7005

1   was being handled by Doerr. *See* September 8, 2016 Email Correspondence,

2   attached hereto as **Exhibit 11**.

3          b.     On September 14, 2016, Savino sent an email message to Doerr,

4   Boetscher and Liguori – while all were still employed by DFG – instructing

5   them to call DFG Client #1 and another DFG client (DFG Client #2): "Tell

6   them to keep the money to close in the bank source and seasoned for an

7   October closing date. **Chances are newco**." September 14, 2016 Email

8   Correspondence, attached hereto as **Exhibit 12** at 2 (emphasis added). Upon

9   information and belief, DFG alleges that Savino referred to "newco" as

10  shorthand for "new company," *i.e.,* AFN, and meaning that they intended to

11  close the loans at AFN – and by which time Savino knew that at least some

12  of the Employee Defendants would be at AFN. Tellingly, Savino sent the

13  message from a non-DFG email address to Doerr, Boetscher and Liguori also

14  at non-DFG email addresses. In response to a question from Doerr about

15  whether the instructions would affect the figures for closing, Savino

16  responded: "Sure it will change. **Until we learn how to input files in AFN I**

17  **can[']t tell you for sure**." *Id.* at 1 (emphasis added).

18         c.     One day later, however, Savino requested that DFG cancel the

19  files for DFG Client #1, DFG Client #2 and a third DFG client, in order to

20  keep secret the Employee Defendants' plan to unlawfully divert loans to

21  AFN. *See* September 15, 2016 Email Correspondence, attached hereto as

22  **Exhibit 13**.

23         d.     On September 30, 2016, Doerr emailed a copy of DFG Client

24  #1's bank statement, which contained highly sensitive and confidential

25  information, to Savino and Maria Lara, the AFN loan processor whom

26  Savino and Liguori, while both still employed by DFG, had recruited to work

27  at AFN. *See* September 30, 2016 Email Correspondence, attached hereto as

28  **Exhibit 14**.

e. The loan for DFG Client #1 was processed and approved at AFN, on October 11, 2016. *See* October 11, 2016 Email Correspondence, attached hereto as **Exhibit 15**.

32. The Employee Defendants (with the possible exception of Harlan, as an underwriter), while still employed by DFG, engaged in deliberately deceptive conduct to move DFG borrowers to AFN. For example, in September 2016, a borrower decided to use DFG in attempting to obtain financing for a property; and Doerr was the loan officer on the account. *See* September 12, 2016 Letter, attached hereto as **Exhibit 16**. In a September 21, 2016 email on which Doerr was copied, an attorney for the buyer on the transaction reported being informed that DFG "is merging with into [sic] another financial entity" and that the mortgage could be expedited "**if the loan took place with the new company**." September 21, 2016 Email Correspondence, attached hereto as **Exhibit 17** at 3-4 (emphasis added). That information was completely untrue. In October 2016, Doerr, who by then had left DFG and joined AFN, informed the buyer's attorney that conditional approval for the loan would need to go through Maria Lara, the loan processor whom Savino and Liguori hired to work at AFN while both were still employed by DFG. *See* October 14, 2016 Email Correspondence and Letter, attached hereto as **Exhibit 18**. At this time, however, the buyer still believed that the transaction was being handled by DFG. *See id.* Doerr and/or the other Employee Defendants furnished the false information about the purported "merger" in an attempt to unlawfully divert the loan from DFG to AFN, *i.e.,* "the new company." The only logical source of this deliberate misinformation was the Employee Defendants, in light of their unlawful scheme. Contrary to the Employee Defendants' misrepresentations, DFG was not merging with another entity and did not authorize its clients' loans to be diverted to other companies.

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

1511-7005

33.   While still employed by DFG, Savino instructed subordinate DFG employees to open loans at AFN.  In a September 21, 2016 email, Savino, using a non-DFG email address, directed Doerr, also with a non-DFG email address, to originate a loan at AFN.  *See* September 21, 2016 Email Correspondence, attached hereto as **Exhibit 19**.  This was done with the knowledge and approval of AFN, as Savino requested assistance from D'Onofrio and Liguori, whom he copied on the message, with this effort.  *See id.*

34.   Liguori left DFG on or about September 27, 2016, to join AFN. Savino left DFG on or about November 23, 2016, to join AFN.  The Employee Defendants ultimately all resigned from DFG and now work at AFN.  *See* NMLS Screenshot for AFN, attached hereto as **Exhibit 20**.

35.   The Employee Defendants (with the possible exception of Harlan, as an underwriter), while still employed by DFG, purposely held off on seeking funding for loan applications as they prepared to leave DFG and join AFN.  *See* Pipeline Reports, attached hereto as **Exhibit 21**.   In addition, there was a sharp decrease in productivity illustrating the Employee Defendants' diversion of loans from DFG to AFN.  For example, Boetscher's pipeline, which averaged 11 loans per month from February-September 2016, had <u>no</u> loans for the entirety of his last 2 months at DFG.  *See id.*  Likewise, Yanez's pipeline, which averaged 7 loans per month from February-September 2016, had <u>no</u> loans in the 2 months prior to his resignation.  *See id.*

36.   As a result of the misconduct detailed above, the Employee Defendants – now all at AFN – work on and reap financial rewards on the loans of DFG borrowers and DFG's trade secrets and confidential information, all of which the Employee Defendants unlawfully diverted to AFN.  Defendants' misconduct continues to date.  For example, a loan for a borrower that originated at DFG, by Savino while still at DFG, was scheduled to close at AFN on January 3, 2017.  *See* ///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

1511-7005

1   Encompass Report, attached hereto as **Exhibit 22**; December 28, 2016 Email

2   Correspondence, attached hereto as **Exhibit 23**.

3       37.   While the Employee Defendants were surreptitiously conspiring to

4   steal DFG's trade secrets, employees, referral sources and clients, they maintained

5   the façade of trusted employees.

6       38.   At all times that it dealt with the Employee Defendants, AFN knew

7   that they were employed by DFG (before they left DFG and joined AFN).  Indeed,

8   in multiple emails with AFN personnel, the Employee Defendants' email

9   signatures are prominently displayed in conjunction with the misconduct

10  described above.

11      39.   The unlawful conduct detailed above severely damaged DFG, causing

12  the closure of its sole Illinois office and the loss of any business presence in that

13  state.

14      40.   As a result of the above actions, DFG has been and continues to suffer

15  irreparable injury and damages.

16      41.   DFG learned of the above actions in December 2016, and thereafter as

17  it discovered the scope and breadth of the misconduct.

18                          **COUNT I**

19   **Deceptive Trade Practice – 15 U.S.C. § 1125 (Lanham Act)**

20                   **(All Employee Defendants)**

21      42.   DFG incorporates all previous paragraphs as though fully stated

22  herein.

23      43.   Pursuant to 15 U.S.C. § 1125, a false or misleading description of fact

24  that is likely to cause confusion or deceive as to the affiliation or association of

25  such person with another person or as to the origin, sponsorship or approval of his

26  services is liable for any damages caused thereby.

27  ///

28  ///

1511-7005

                          14

44.   The Employee Defendants misrepresented to borrowers that these borrowers were engaging in transactions with DFG, and that DFG would maintain their private information and originate, price, process, close and fund their transactions.

45.   The Employee Defendants misrepresented to consumers that they were engaging and undertaking such transactions as representatives and agents in affiliation and association with DFG.

46.   In fact, unbeknownst to DFG consumers, the Employee Defendants were originating, processing, underwriting, approving, pricing and funding borrower loans with the intention of diverting them – and, in fact, did so divert them – to AFN.

47.   As a direct result of the Employee Defendants' actions, DFG has been harmed and continues to be irreparably harmed in the loss of business and goodwill in the marketplace and consumers are harmed through the Employee Defendants' material misrepresentations.

## COUNT II

### Breach of Contract

### (All Employee Defendants)

48.   DFG incorporates all previous paragraphs as though fully stated herein.

49.   As set forth in detail above, Savino, Liguori and Boetscher each signed binding employment agreements (the "Employment Agreements") with non-solicitation provisions, non-interference provisions, provisions protecting the confidentiality of DFG customer information, and provisions protecting DFG's confidential and proprietary information. Each of the other Employee Defendants signed an Employment Exclusivity Disclosure, certifying that his only employment is with DFG and requiring him to provide advance notice to DFG

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

1511-7005

1  before engaging in outside employment.   *See* Employment Agreements and

2  Employment Exclusivity Disclosures, attached hereto collectively as **Exhibit 1**.

3      50.   The Employee Defendants breached these agreements by engaging in

4  the conduct described above.

5      51.   As a result of the breaches by the Employee Defendants set forth

6  above, DFG has suffered damages and continues to suffer irreparable damages

7  through the loss of revenue, loss of goodwill and the unlawful competition

8  engaged in by them in violation of their Employment Agreements.

9                               **COUNT III**

10            **Tortious Interference with Business Relations**

11                          **(All Defendants)**

12      52.   DFG incorporates all previous paragraphs as though fully stated

13  herein.

14      53.   To establish a tortious interference with contractual relations, DFG

15  must show that Defendants engaged in culpable conduct that interfered with a

16  contractual relationship between DFG and a third party, and that the motive for the

17  interference was malicious or involved dishonest, unfair and improper means.

18      54.   DFG enjoyed business relationships with borrowers and potential

19  borrowers who indicated an interest in engaging DFG's services.

20      55.   DFG and its borrowers were in an economic relationship that

21  benefitted DFG economically, and likely would have continued to benefit DFG in

22  the future.

23      56.   By virtue of their former positions and duties with DFG, the Employee

24  Defendants were aware of the relationships that DFG enjoyed with DFG's

25  borrowers.

26      57.   By virtue of being competitors with DFG and having confidential

27  information diverted to AFN by the Employee Defendants, AFN was aware of

28  such relationships between DFG and its borrowers.

58. The Employee Defendants interfered with these existing and prospective relationships by diverting borrowers to AFN, in many cases without the borrowers' knowledge that this was occurring. The Employee Defendants took these actions while they were employed by DFG. The Employee Defendants' conduct was willful and malicious.

59. AFN interfered with DFG's business relations by improperly using Savino and Liguori to solicit their subordinate employees while in their managerial and supervisory capacities at DFG.

60. Defendants' actions were undertaken willfully and maliciously using dishonest, unfair and improper means.

61. As a direct result of Defendants' actions, DFG has been harmed and continues to be irreparably harmed in the loss of business and goodwill in the marketplace.

## COUNT IV

### Breach of Fiduciary Duty and Duty of Loyalty

### (All Employee Defendants)

62. DFG incorporates all previous paragraphs as though fully stated herein.

63. The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) one or more breaches of that duty by the defendant, and (3) damages directly caused by that breach.

64. Additionally, a claim for breach of duty of loyalty lies when there is a relationship giving rise to a duty of loyalty, the defendant breaches that duty and the breach directly causes damages.

65. The Employee Defendants were entrusted with DFG borrowers' personal information, DFG's proprietary information, trade secrets, referral relationships and sales leads. The Employee Defendants were placed into unique relationships with DFG's referral sources giving them special access specifically

17

1511-7005

1   for the purpose of forming and fostering relationships with these referral sources.

2   As a result, each of the Employee Defendants had a duty to act in DFG's best

3   interests.

4       66.  The Employee Defendants utilized their positions and DFG's trust and

5   confidence to solicit borrowers and other employees, and to access and improperly

6   disclose vital business information and vital trade secrets to AFN, all the while the

7   Employee Defendants continued to receive compensation from DFG and

8   continued to maintain the impression they were loyal DFG employees.

9       67.  As a direct result of Defendants' actions, DFG has been harmed and

10   continues to be irreparably harmed in the loss of business and goodwill in the

11   marketplace.

12                         **COUNT V**

13        **Aiding and Abetting a Breach of Fiduciary Duty**

14                       **(AFN)**

15       68.  DFG incorporates all previous paragraphs as though fully stated

16   herein.

17       69.  As more fully detailed above, the Employee Defendants, by virtue of

18   their employment with DFG, and thus as a matter of California law, at all times

19   owed a fiduciary duty and a duty of loyalty to DFG.

20       70.  The Employee Defendants breached their fiduciary duties and duties of

21   loyalty by directing/diverting borrowers to AFN, misappropriating trade secrets

22   and soliciting employees, all while they remained in DFG's employ.

23       71.  AFN provided substantial assistance to the Employee Defendants by

24   facilitating such transactions, and knowingly and willfully taking financial

25   advantage of the breach of fiduciary duties by the Employee Defendants.

26       72.  As a result of AFN's actions in aiding and abetting the fiduciary

27   breaches outlined herein, DFG has been harmed and continues to be irreparably

28   harmed.

## COUNT VI

### Misappropriation of Trade Secrets – California Uniform Trade Secrets Act

### (All Defendants)

73.   DFG incorporates all previous paragraphs as though fully stated herein.

74.   California Civil Code § 3426.1(d) defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process," which gives the holder of the trade secret an advantage over competitors who do not know or use it and is the subject of reasonable efforts "to maintain its secrecy."

75.   DFG's client lists, client leads and personal borrower information were kept secret by substantial measures undertaken by DFG to protect the secret nature of the information.

76.   The Employee Defendants were entrusted with this confidential information and proprietary information in the performance of their jobs.

77.   The Employee Defendants improperly and unlawfully accessed and disclosed these trade secrets to AFN, and AFN utilized such trade secrets in breach of all fiduciary duties and duties of loyalty, all to DFG's detriment.

78.   Unless Defendants are restrained by appropriate injunctive relief, pursuant to California Civil Code § 3426.2, their conduct will cause and continue to cause DFG immediate and irreparable harm for which there is no adequate remedy at law.

79.   As a direct result of Defendants' actions, DFG has been harmed and continues to be irreparably harmed.

///
///
///
///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

1511-7005

## COUNT VII

### Defend Trade Secrets Act – 18 U.S.C. § 1836 *et seq.*

### (All Defendants)

80.   DFG incorporates all previous paragraphs as though fully stated herein.

81.   The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3), defines a trade secret as, *inter alia*, "all forms and types of financial, business, scientific, technical, economic, or engineering information, . . . whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" – provided that the owner took "reasonable measures to keep such information secret" and it offers the holder of the trade secret an advantage over competitors who do not know or use it.

82.   DFG's client lists, client leads and personal borrower information were kept secret by substantial measures undertaken by DFG to protect the secret nature of the information.

83.   The Employee Defendants were entrusted with this confidential information and proprietary information in the performance of their jobs.

84.   The Employee Defendants improperly and unlawfully accessed and disclosed these trade secrets to AFN, and AFN utilized such trade secrets in breach of all fiduciary duties and duties of loyalty, all to DFG's detriment.

85.   DFG's trade secrets are related to products or services used in interstate commerce.

86.   As a direct result of Defendants' actions, DFG has been harmed and continues to be irreparably harmed.

///

///

///

1511-7005

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

## COUNT VIII

## Fraud

### (All Defendants)

87.   DFG incorporates all previous paragraphs as though fully stated herein.

88.   The Employee Defendants conspired with AFN to falsely and fraudulently conceal from DFG that they were secretly converting the confidential information of DFG and its borrowers, as well as diverting DFG's borrowers to AFN.  Otherwise, the Employee Defendants owed a fiduciary duty as employees to disclose their omissions.

89.   When the Employee Defendants entered into the conspiracy with AFN, Defendants failed to disclose, or omitted mention of, such fraudulent conduct to DFG.   Defendants knew their actions to be fraudulent and they concealed or omitted the truth from DFG with the intent to defraud and deceive DFG.  By their intentional misrepresentations, Defendants defrauded and deceived DFG.

90.   At the time of the fraudulent concealment or omissions by the Employee Defendants, with the participation and knowledge of AFN, and at the time DFG engaged in the actions herein alleged, DFG was ignorant of the actions being undertaken by Defendants, believed that the Employee Defendants were acting in the best interests of DFG, and relied upon the Employee Defendants in continuing to employ and compensate them.

91.   DFG did not discover the fraudulent concealment or omissions by the Employee Defendants, in conspiracy with AFN, until after auditing the email accounts of the Employee Defendants, in mid-December 2016, following the departure of the Employee Defendants from DFG to AFN.

92.   As a direct result of Defendants' actions, DFG has been harmed and continues to be irreparably harmed, including, but not limited to, damage to

1511-7005

1   business reputation, lost profits, lost revenue, lost business opportunities and loss

2   of workforce.

3       93. Defendants committed the wrongful acts maliciously, oppressively,

4   and with the intent to defraud and permanently deprive DFG of its property and

5   employees.

## COUNT IX

### Violation of California Penal Code § 502

### (All Defendants)

9       94. DFG incorporates all previous paragraphs as though fully stated

10  herein.

11      95. All Defendants have, either individually or in conspiracy with the

12  other Defendants, without permission, taken and copied, or assisted in taking and

13  copying, data from DFG's computer system and computer network, and have used

14  the data on that system to divert confidential information to AFN, in violation of

15  California Penal Code §§ 502(c)(1) and (2).

16      96. All Defendants, either individually or in conspiracy with the other

17  Defendants, have knowingly used, or caused to be used, DFG's computer services

18  without permission, in the manner described above, in violation of California

19  Penal Code § 502(c)(3).

20      97. All Defendants, either individually or in conspiracy with the other

21  Defendants, have knowingly and without permission, in the manner described

22  above, accessed DFG's databases, in violation of California Penal Code §

23  502(c)(7).

24      98. These violations have damaged DFG by, among other things,

25  unlawfully and fraudulently diverting DFG's confidential borrower information to

26  AFG, diverting DFG's borrowers to AFN, and interfering with and disrupting

27  DFG's computer systems.

28  ///

1511-7005

22

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

99. Pursuant to California Penal Code § 502(e), DFG is entitled to compensatory and punitive damages, attorneys' fees, and other legal and equitable relief as respectfully prayed for in this Complaint.

### COUNT X

### Unfair Competition

### Violation of California Business and Professions Code § 17200 *et seq.*

### (All Defendants)

100. DFG incorporates all previous paragraphs as though fully stated herein.

101. Defendants' actions, as alleged herein, constitute unfair, unlawful and/or fraudulent business acts and practices under California Business and Professions Code § 17200. Such actions are prohibited by various state and federal laws, and are unscrupulous, unfair and injurious to DFG.

102. Defendants were aware of the wrongful nature of these acts.

103. As a direct result of Defendants' actions, DFG has been harmed and continues to be irreparably harmed, including, but not limited to, damage to business reputation, lost profits, lost revenue, lost business opportunities and loss of workforce.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Directors Financial Group respectfully requests that an Order be entered:

(1) Enjoining all Defendants, their agents, servants, representatives, employees and consultants, during the pendency of this action, from maintaining, using, disclosing or disseminating any confidential and/or proprietary information of Plaintiff that Defendants were provided, were privy to or obtained knowledge of while employed and/or in any capacity

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18

1511-7005

1    providing services for or on behalf of Plaintiff and returning any such information
2    in Defendants' possession;

3        (2)    Enjoining all Defendants, their agents, servants, representatives,
4    employees and consultants, during the pendency of this action, from
5    maintaining, using, disclosing or disseminating any personal information
6    of Plaintiff's customers, including but not limited to, their Social Security
7    numbers, home and business addresses and telephone numbers, income,
8    liability, asset statements, and their account numbers and monetary
9    balances for bank accounts, mortgages, credit cards, investment and
10   retirement accounts;

11       (3)    Enjoining all Defendants, their agents, servants, representatives,
12   employees and consultants, during the pendency of this action, from
13   marketing, promoting, selling, presenting and/or holding themselves out
14   as employees, agents or business affiliates of Plaintiff;

15       (4)    Ordering all Defendants to immediately to return to Plaintiff any and all
16   of the confidential information;

17       (5)    Ordering all Defendants to produce for inspection to Plaintiff, any and all
18   computers or means of electronic storage that have been accessed or been
19   used by Defendants to access or store the confidential information;

20       (6)    Ordering all Defendants to identify in writing and under oath and within
21   seven (7) days of the Court's Order, the name and address of each and
22   every person or entity with whom the confidential information was
23   shared, including their identity and address of each and every person;

24       (7)    Ordering all Defendants to cease and desist from soliciting, providing any
25   loan services for, or receiving any compensation arising from any
26   individuals whom Defendants, their agents, servants, or employees,
27   directly or indirectly learned of through or because of leads or referral
28   ///

sources developed by Plaintiff, or as a result of Plaintiff's business activities, prior to the cessation of employment with Plaintiff;

(8)   Ordering that all Defendants identify by name of borrower and property address, within seven (7) days of the Court's Order, any and all loan applications in Defendant AFN's possession that were referred to Defendant AFN or directly or indirectly originated through any person employed by Plaintiff in the prior 15 months;

(9)   Ordering that Defendant AFN identify and disclose all loan applications, credit reports and appraisals ordered for loans to Illinois residents in the preceding 15 months;

(10)   Ordering that the Employee Defendants cease and desist from violating any applicable restrictive covenants contained in their employment agreements with Plaintiff;

(11)   Ordering all Defendants to cease and desist from soliciting Plaintiff's employees or interfering with Plaintiff's relationships with its employees or customers;

(12)   Barring Defendant AFN from hiring or employing any of the Employee Defendants;

(13)   Enjoining all Defendants from accessing Plaintiff's computers or using its passwords to access its systems;

(14)   Ordering Defendants to pay money damages in an amount to be proven at trial;

(15)   Ordering Defendants to pay punitive damages for their fraud/civil conspiracy to commit fraud;

(16)   Ordering Defendants to pay treble damages for violation of the Lanham Act;

(17)   Ordering Defendants to pay double damages for violation of the Defend Trade Secrets Act;

25

(18)   Ordering Defendants to pay double damages for violation of the California Uniform Trade Secrets Act;

(19)   Ordering Defendants to pay attorneys' fees and costs;

(20)   Awarding prejudgment interest at the maximum legal rate;

(21)   Ordering expedited discovery allowing the parties to immediately engage in discovery and serve up to ten (10) interrogatories and ten (10) document requests, which must be responded to within five (5) days of service; and

(22)   Ordering any other relief as the Court deems just and proper.

Plaintiff further demands a jury trial pursuant to law.

**PETTIT KOHN INGRASSIA & LUTZ PC**

Dated:  January 5, 2017          By:    s/ Thomas S. Ingrassia, Esq.
                                        Thomas S. Ingrassia, Esq.
                                        Jennifer N. Lutz, Esq.
                                        Cameron O. Flynn, Esq.
                                        Attorneys for Plaintiff
                                        **DIRECTORS FINANCIAL GROUP**

1511-7005

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
CASE NO. 8:17-CV-18